IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

UNITED STATES OF AMERICA )
)
v. ) CRIM. NO. GLR-03-0405
)
JOSE JESUS GUTIERREZ, )
 a/k/a "Chuey," )
)
 *Defendant.* )
_____)

## OPINION AND ORDER

This matter is once again before this Court following the opinion and remand in

this case issued by the Fourth Circuit on January 18, 2023. *United States v. Gutierrez,*

Appeal No. 21-7092, 2023 WL 245001 (Jan. 18, 2023). In that decision, the Court of

Appeals remanded with instructions to this Court to provide "an individualized and

'more robust' explanation for why that evidence [proffered by the defendant of his post-

sentencing rehabilitation] did not weigh in favor of a sentence reduction." 2023 WL

245001, at *3, *quoting United States v. Martin,* 916 F.3d 389, 396 (4th Cir. 2019). The

Court of Appeals further pointed to what it characterized as "Gutierrez's unblemished

disciplinary record [that] extends for close to 17 years, as well as "a Bureau of Prisons

assessment that puts him at a low risk of recidivism." *Id.* at *4.

Following the remand by the Fourth Circuit, the parties made a series of

additional filings, as summarized below.

- ECF # 259 (March 15, 2023): Defense counsel filed an initial
 supplement to his previous district court filings, in which he
 primarily stressed the claims that (1) relevant mitigating evidence
 concerning the § 3553(a) factors was not presented at Gutierrez's
 original sentencing and (2) that Gutierrez's sentence was far longer
 and therefore disparate from that of sentences imposed on similarly
 situated defendants in more recent years, and further that variant

1

sentences in narcotics cases were far more common today than they were at the time of Mr. Gutierrez's sentencing in September 2005, which occurred only about eight months after the Supreme Court's seminal decision in *Booker v. United States*, 543 U.S. 220 (2005). The defense's filing concluded by asking the Court to "consider a reduction [] down to a time-served sentence, plus extended supervised release, up to 20 years," which would be 240 months.

After this filing, however, defense counsel continued working with the government's newly assigned counsel – who was co-counsel in the original proceedings (including the defendant's trial and sentencing) back in 2004-05, but who had not previously been involved in the compassionate release proceedings – over the following months to gather additional records, including the transcript of his September 2005 sentencing hearing and other proceedings from the original prosecution, as well as more extensive information relating to both his prison disciplinary history and his rehabilitative efforts, in order to more fully flesh out the picture of the defendant that was previously submitted to this Court and the Fourth Circuit. The results of these mutual efforts by the parties were summarized by the respective parties' counsel in two further filings:

- ECF # 268 (June 15, 2023): Defense counsel candidly acknowledged in this further filing that the result of his and government counsel's efforts to more fully develop the record "is a mixed bag. Some good and some not good for Mr. Gutierrez." *Id.* at 2. Counsel stressed that as a result of the additional transcripts (including that from the defendant's sentencing hearing) that had been located and reviewed, it had become clear that Mr. Gutierrez flatly refused to co-operate either before or during trial or at sentencing with his court-appointed counsel, Arthur Cheslock. He took this course because, in common with a significant number of other defendants in this Court at that time (2004-05), he had come to subscribe to the "flesh-and-blood man"/sovereign citizen ideology, which led him to deny that the Court had any jurisdiction over him.

    Defense counsel noted that Gutierrez's embrace of the "flesh-and-blood man" ideology caused him to successively (1) refuse to consider a reasonable plea offer that was extended by the prosecutors, and then (2) to further refuse to co-operate with his

counsel during trial or (3) in connection with his sentencing proceeding. Defense counsel contended that as a result of this misguided approach by his client, the sentencing court (the Hon. William D. Quarles, Jr.) was deprived of the opportunity to hear any mitigating evidence about the defendant's background and his youth growing up in South Central Los Angeles that might have offset, to at least some degree, the highly prejudicial evidence presented against him at trial of his participation as a high-level deputy in a criminal organization that trafficked in massive quantities of narcotics and did not hesitate to contemplate the use of violence against family members of conspirators who agreed to co-operate with investigators. Defense counsel indicated that based upon his research, individuals who were convicted of crimes involving murder in this district more recently had received sentences in the range of 20-25 years, far less than the 40 years (480 months) received by Mr. Gutierrez.

- ECF # 271 (July 31, 2023): In its response to the defense's two post-remand filings, the government agreed that the additional information the parties had developed post-remand presented a more complicated picture than anyone – including the members of the Fourth Circuit panel – had previously understood. The government stressed that the evidence presented at trial demonstrated that Gutierrez was the trusted top lieutenant of his co-defendant Laurencio Gonzalez in the narcotics trafficking activity of the Los Angeles conspirators. The government pointed out that he was a man of mature years (30-31) at the time of his crimes and subsequent trial. The government further noted (*id.* at 21-22) that the Fourth Circuit's understanding that Gutierrez had an unblemished disciplinary history extending over 17 years was erroneous – in particular, he had a serious infraction for possession two sharpened shivs in his cell back in 2010 – although his record over the past 13 years had been clean, aside from his being punished for what appears to have amounted to collective liability based upon prison officials' discovery of an ice-pick-type device that one of his three cellmates had made and hidden inside a capped bedpost. *Id.* at 21-25.

The government concluded that under the special circumstances of this case – specifically, the defendant's disciplinary history over the past 13 years; his very substantial efforts at rehabilitation, including learning a trade as a welder and teaching that skill to other inmates; and because it was reasonable to believe that the length of his original sentence had been increased as a result of his joining in what was at the time a widespread delusion affecting many District of Maryland defendants, thereby depriving the Court of substantial mitigation information about the circumstances of his early life – it

3

agreed that there was a basis for this Court to grant the defendant a reduced sentence in the exercise of its sound discretion.

The government recommended that the Court set the length of any reduced sentence at a point which (1) would not result in the defendant having overserved the sentence imposed once his existing good time credits of just over 800 days were taken into account and (2) that would afford the defendant a reasonable period in a structured environment such as a halfway house or community confinement facility while he was making his readjustment to society after an absence of close to twenty years. The government attached as Exhibit 5 to its response an email from a Bureau of Prisons official indicating that if the defendant's sentence were reduced to 278 months, that would give him a projected release date of January 8, 2024. Because of the government's concern with affording the defendant time for a reasonable period of structured re-entry services, it recommended that any reduced sentence granted by this Court be set at 282 months.

WHEREFORE, in light of the considerations set forth above and based upon the fuller information now provided by the parties to this Court, I find that the combination of (1) the defendant's embrace of the "flesh-and-blood" man ideology throughout his original proceedings back in 2004-05, which caused him to decline a reasonable plea offer extended by prosecutors and to refuse to co-operate with his counsel in making mitigating evidence available to the court at his sentencing; (2) the character of his prison disciplinary record over the past 13 years since mid-2010; and (3) his sustained efforts over an extended period to further educate and rehabilitate himself, including learning a trade as a welder and serving as an instructor teaching that trade to other inmates, together constitute extraordinary and compelling circumstances meriting relief

4

in the form of a reduced sentence.  I have further considered the § 3553(a) factors and I

find that they weigh in favor of relief, as does the very substantial length of time for

which the defendant has already been incarcerated.  I further note that there is evidence

that the defendant has substantial family support, including a place to reside upon his

release.

THEREFORE, it is this **27th** day of *September* 2023, hereby

ORDERED that the defendant's sentence of incarceration shall be reduced from

480 months to 282 months (23.5 years).  Mr. Gutierrez shall receive full credit for any

accumulated good time credits to which he is entitled, in accordance with the standard

procedures of the Bureau of Prisons.  He shall remain subject to the five-year term of

supervised release to which he was originally sentenced.

THE HON. GEORGE L. RUSSELL
United States District Court Judge